# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMEL PLEDGER, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:CV-16-1702 |
| v. | : | (Judge Nealon) |
| C.B.M. FOOD VENDORS, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

On August 15, 2016, Plaintiff, Jeremel Pledger, an inmate at the State Correctional Institution Camp Hill, Pennsylvania, filed this pro se civil rights action pursuant to 42 U.S.C. §1983. He complains of incidents which occurred at his prior place of confinement, the Lackawanna County Prison. Named as Defendants are the Lackawanna County Prison and the following Lackawanna County Prison employees: Captain Shanley and Officer Michael Esposito. (Doc. 1, complaint). Plaintiff also names C.B.M. Food Vendors and Benjamin O'Leary, an employee of C.B.M. Id.

Plaintiff alleges that he was "hired to work in the kitchen without being medically cleared" and "was made to work 7 days a week with no days off from 6 am to 6 pm, sometimes later until 9 pm." (Doc. 1). He states that he "worked for

87 days from March 6th until May 31st." Id. He claims that "on January 29th the doctor of Lackawanna County Prison deemed [him] no work no recreation." Id. Finally, Plaintiff states that "on May 24th [he] strained his back while working" and "C.B.M. workers Kevin Mones, Ben O'Leary and Kitchen Officer told [Plaintiff] that if he reported his injury he would be fired because he was not suppose to be working." Id. Plaintiff was then transferred to SCI-Graterford, where he claims he "received an increase in medication on 7/9/16 after leaving the Lackawanna County Prison." Id.

On August 15, 2016, Plaintiff filed the instant action in which he seeks compensatory and punitive damages for "lack of medical attention, increase of depression, violation of inmate workers rights" and "for mental anguish in delaying [him] from proper health care" Id. Plaintiff also seeks to recover for "negligence of grievance procedures." Id.

On May 1, 2017, Defendants C.B.M. Food Vendors and Benjamin O'Leary filed a motion to dismiss Plaintiff's complaint, and supporting brief, arguing, *inter alia*, dismissal for lack of jurisdiction due to Plaintiff's failure to exhaust administrative remedies. (Docs. 16, 17). On June 21, 2017, the remaining Defendants filed a motion for summary judgment, supported by a statement of material facts, exhibits and supporting brief. (Docs. 21-3). Although Plaintiff filed

a brief in opposition to the motion to dismiss, Plaintiff has failed to oppose the motion for summary judgment. As such, the motion is treated as unopposed. For the reasons set forth below, the Court will grant Defendants' motion to dismiss and motion for summary judgment.

## II. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at

3

555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the

4

screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).

**Exhaustion**

The Prison Litigation Reform Act requires that inmates exhaust the administrative remedies that are available to them prior to bringing suit in federal court. 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted." Id.

The United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, ––– U.S. –––, 136 S.Ct. 1850, 1856, 195 L.Ed.2d 117 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [ ] [special] circumstances into account." Ross at 1856.

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them

to. For that reason mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing, Booth v. Churner, 532 U.S. 731, 741 (2001); Porter v. Nussle, 534 U.S. 516, 520 (2002); Woodford, 548 U.S. at 91.

Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes ... before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures." Id. at 89, quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. Id. The first step in the inmate

6

grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review. Id.

Defendants C.B.M. Food Vendors and Benjamin O'Leary have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Lackawanna County Prison. Defendants argue that Plaintiff's own complaint reveals that Plaintiff "filed grievances at Lackawanna County Prison got no response" and that he "filed a grievance to PA DOC grievance department on 8-4-16." (Doc. 1 at 2). However, while it is apparent that Plaintiff started the grievance process at both the Lackawanna County Prison and the State Correctional Institution he was subsequently transferred to, he failed to finish the grievance process. To the extent that Plaintiff submitted a grievance to the appropriate official and did not receive a response, the procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his satisfaction.

Plaintiff's next step would have been to appeal any decision, or lack of one,

7

to the next level of review. It is clear from the face of Plaintiff's complaint that he failed to properly exhaust administrative remedies. Plaintiff does not refute this. Thus, the failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." Id. at 231, 232. Thus, Pledger has sustained a procedural default.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Plaintiff offers no evidence to justify his failure to appeal to final review. Thus, Pledger is now foreclosed from litigating his claims in this Court.

8

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to grant the motion to dismiss filed on behalf of C.B.M. Food Vendors and Benjamin O'Leary.

9

### III. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail

Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

A. **Statement of Facts**[1]

On January 24, 2016, Plaintiff, Jeremel Pledger, was admitted to the Lackawanna County Prison as an inmate. (Doc. 21-1 at 2). At the time of his admission, Plaintiff gave a history of having suffered a stroke just five (5) days previous. Id. As a result of Plaintiff's medical history, he was restricted to no work and no recreation at the Lackawanna County Prison. (Doc. 21-2 at 2).

On or about January 25, 2016, the Lackawanna County Prison obtained the medical records from St. Clare Hospital, Dover, New Jersey, where Plaintiff was treated during his previous hospitalization. (Doc. 21-3 at 2-4). Said records indicated that the Plaintiff suffered from Bell's Palsy, rather than from a stroke. Id. Nevertheless, out an abundance of caution, Plaintiff continued to be restricted to no work and no recreation.

---

[1]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. 23) will be deemed admitted.

On January 30, 2016, Plaintiff received a medical examination from the medical staff at the Prison. (Doc. 21-7 at 2). The examination showed no positive findings and Plaintiff's only request was for eye drops. Id.

On February 28, 2016, Plaintiff submitted a request that he be cleared to work in the kitchen alleging that he was fully capable of doing so. (Doc. 21-4 at 2). Plaintiff was advised that after he was "cleared by all others required, we will evaluate you." Id.

On February 28, 2016, Plaintiff submitted a second request that he be cleared to work in the kitchen. (Doc. 21-5 at 2).

On March 3, 2016, Plaintiff submitted a third request to be cleared for work in the kitchen. (Doc. 21-6 at 2). That request was approved on March 10, 2016. Id. Inmates working in the kitchen are required to work a maximum of forty (40) hours per week. (Doc. 26 at 2). Any additional hours worked are done so at the request of the inmate. Id.

On May 11, 2016, Plaintiff was seen by the medical department, stating "he had his friend cut a mole off his back earlier today with county issued nail clippers" and it was bleeding and warm and tender to the touch. (Doc. 21-7 at 2). Plaintiff was treated with Betadine and Minocycline and advised to return for a follow up on three days. Id.

13

On May 26, 2016, Plaintiff was issued a Misconduct Report for taking unauthorized food from the kitchen or staff dining; failure to perform work duties; malingering and disobeying a direct order. (Doc. 21-8 at 2). The misconduct states as follows:

> While on duty as the Kitchen Officer, I was informed by CBM employee Kevin Mones that he caught inmate kitchen worker Pledger stealing food from the kitchen dry storage. Inmate Pledger has been verbally warned by myself & CBM employees multiple times about stealing food which he continues to ignore. Today inmate Pledger was late for work. Today, and on multiple occasions, Pledger has been verbally warned about his failure to carry out & complete work assignments in the kitchen. Kevin Mones has stated to me that inmate Pledger continually fails to do the work which he assigns him, & that he catches him taking food regularly without asking. All kitchen workers have received direct orders from myself not to take food, including inmate Pledger. End of report.

Id.

On May 31, 2016, Plaintiff appeared for his Misconduct Hearing. (Doc. 21-9). Plaintiff states that he never stole anything and that he "asked if he could have BBQ sauce and was told no and left". Id. He claims that he was late for work because he was "helping Counselor Gavin." Id. Plaintiff was found guilty and was terminated from his kitchen position. Id.

### B. Discussion

A plaintiff, in order to state a viable § 1983 claim, must plead two essential

14

elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

A §1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978); see also Thompson v. Burke, 556 F.2d 231, 232 (3d Cir.1977) (parole Board could not be sued because it is not a person within the meaning of § 1983). A prison or correctional facility is also not a "person" within the meaning of § 1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir.1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D.Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D.Pa. Feb.28, 1995).

Pursuant to the above standards, the Lackawanna County Prison is not a proper Defendant and will be dismissed.

Moreover, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution."). As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

In the context of medical care, while the relevant inquiry is whether defendants were: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element), Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), the plaintiff must meet the requirements of the inquiry.

Here, Plaintiff has failed to indicate how any of the moving Defendants were involved in a deprivation, or violation, of Plaintiff's constitutional rights.

The undisputed record reveals that Plaintiff was not a stroke victim and that there was nothing in his records which would prevent him from working in the

kitchen. Nothing demonstrates this more clearly than the fact that he wrote and submitted three (3) separate requests that he be allowed to work in the kitchen. On March 10, 2016, the Prison physician relented and allowed Plaintiff to work in the kitchen. Once he was allowed to work in the kitchen, his work proceeded from March to May, 2016, without any complaint of physical pain or being overworked. On May 26, 2016, he was charged with stealing food, neglecting his duties, and being chronically late. Being found guilty of these actions resulted in Plaintiff being terminated from his kitchen duties.

From January 24, 2016, the date of Plaintiff's entry into the Lackawanna County Prison to May 26, 2016, the date of Plaintiff's termination, there are only two recorded medical visits; one requesting eye drops and the second for treatment of a mole on Plaintiff's back. Both times, Plaintiff's concerns were addressed and treated. There is no indication in the medical record of a back injury on May 24, 2016. To the extent that Plaintiff states that he was "told that if he reported his injury he would be fired because he was not supposed to be working," Plaintiff's argument is completely lacking in merit, as the record demonstrates that he as cleared to work in the kitchen on March 10, 2016. There is absolutely no indication in the record that any of the moving Defendants were deliberately indifferent to Plaintiff's medical needs, and more importantly, to what serious medical need they

17

were indifferent. Accordingly, the remaining Defendants' motion for summary judgment will be granted.

## VI. Conclusion

For the reasons stated above, the motion to dismiss, filed on behalf of Defendants C.B.M. Vendors and Benjamin O'Leary will (Doc. 16) will be granted. The motion for summary judgment, filed on behalf of Defendants Lackawanna County Prison, Officer Esposito and Captain Shanley (Doc. 21) will be granted. A separate Order will be issued.


Dated: March 29, 2018                /s/ William J. Nealon
                                     United States District Judge

# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMEL PLEDGER, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:CV-16-1702 |
| | : | |
| v. | : | (Judge Nealon) |
| | : | |
| C.B.M. FOOD VENDORS, et al., | : | |
| | : | |
| Defendants | : | |

# ORDER

**AND NOW, THIS 29th DAY OF MARCH, 2018**, for the reasons set forth in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss Plaintiff's complaint, (Doc. 16), is **GRANTED**.

2. Defendants' motion for summary judgment (Doc. 21) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants Lackawanna County Prison, Captain Shanley and Officer Esposito and against Plaintiff on all claims.

3. Plaintiff's motion for court ordered mediation and appointment of counsel (Docs. 30, 31) are **DISMISSED** as moot.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

/s/ William J. Nealon
**United States District Judge**